UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| GARLAND SLADE, BOP#20408-074 ) | |
| ) | |
| v. ) | NO. 2:05-CV-210 |
| ) | |
| WASHINGTON COUNTY DETENTION ) | |
| CENTER, MAJ. BRENDA DOWNES, ) | |
| CAPT. FINLEY, SGT. JENKINS, ) | |
| SGT. DAVIS, OFFICER NICHOLAS ) | |
| ANDES, and OFFICER TIM MOORE ) | |

## **MEMORANDUM and ORDER**

Garland Slade, a federal prisoner serving a life sentence in the United States Penitentiary in Jonesville, Virginia, has filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that he was subjected to excessive force while he was a federal pretrial detainee in the Washington County Detention Center (WCDC).

### I. **The Filing Fee**

Plaintiff is **ASSESSED** the civil filing fee of $250.00.[1] The custodian of plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of

---

[1] Though the civil filing fee has been increased, plaintiff filed his case before the increase and is being charged the old fee of $250.00.

the average monthly deposits to plaintiff's inmate trust account; *or* (b)twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B).

Thereafter, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $250.00 has been paid to the Clerk's Office.[2] *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997).

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where plaintiff is now confined.

## II. **Plaintiff's Allegations**

In his complaint, plaintiff makes the allegations which follow. On February 13, 2005, defendant Nicholas Andes came to plaintiff's cell in the WCDC to seize a television set he was using, which was owned by another inmate. After a verbal exchange, defendant told plaintiff to pack his belongings for cursing him.

---

[2] Send the payments to:
        Clerk, USDC
        220 West Depot Street, Suite 200
        Greeneville, TN 37743

Plaintiff responded, "since I am going to lock down anyway, f _ _ _ you." Defendant then instructed plaintiff to drop his belongings and began to push him out the cell door. Plaintiff dropped what he was holding in his right hand, but, without thinking, kept an ink pen in his left hand.

When they arrived downstairs, defendant handcuffed plaintiff's hands behind him, noticed the ink pen, and seized it. The defendant placed the pen on the desk, accused plaintiff of trying to use the ink pen as a weapon—the pen was flexible and only two inches in length, pushed him down the hall, and repeatedly slammed his head against the wall, while forcefully twisting the handcuffs. Plaintiff begged him to stop, but instead, defendant twice picked him up and slammed his head on the floor, then kneed him in the back. After explaining that he was "going to teach [plaintiff] a lesson" and calling him a name, defendant pushed plaintiff into the booking area. When the beating occurred, plaintiff was not resisting and his hands were cuffed behind his back.

The other defendants either failed to intervene in the assault, to properly train or supervise subordinates, also assaulted plaintiff, or conspired to issue a false disciplinary report against him.

### III. **Screening the Complaint**

The complaint must now be screened and, if it is frivolous or malicious,

fails to state a claim, or names defendants who are immune, it must be dismissed. 28 U.S.C. § 1915A and § 1915(e). For ease of discussion, the claims have been divided into categories.

A. **Claims against the Washington County Detention Center**

The first defendant named in the complaint is the WCDC. However this defendant is a non-suable entity because it is a building and not a "person" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 688-90 (1978); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, **1 (6th Cir. May 1, 1997). Plaintiff's claims against WCDC are, therefore, DISMISSED.

B. **Claims based on Respondeat Superior**

Plaintiff maintains that the remaining defendants, with the exception of defendant Andes, are responsible for the care and safekeeping of all federal pretrial detainees at the WCDC, but that they have inadequately supervised, trained and controlled their subordinates . To the extent that plaintiff is seeking to impose supervisory liability on these defendants, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir.1995), *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Because plaintiff's theory of recovery is unavailable under § 1983, any and all claims resting upon this theory are

**DISMISSED**.

C. **Official Capacity Claims**

Plaintiff has sued all defendants in their official capacities (and also individually). A suit against a defendant in his official capacity is, in reality, an action against the entity that the defendant represents because any judgment awarded would have to be paid by the represented entity. *Monell*, 436 U.S. at 690-91 (A judgment against a defendant sued in his official capacity imposes liability upon the entity that he represents.). *Accord*, *Leach v. Shelby County Sheriff*, 891 F.2d 1244 (6th Cir. 1989) ("A suit against an individual in `his official capacity' has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries.").

A municipality—in this case, Washington County, Tennessee (the County)—cannot be held liable merely because it employed a tortfeasor. *Monell*, 436 U.S. at 691. Instead, to succeed on a claim against a defendant in his official capacity, a plaintiff must show that he has suffered harm because of a constitutional violation and that a policy or custom of the entity caused the harm. *Id.*; *Soper v. Hoben*, 195 F.3d 845, 853-54 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000). Put simply, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v.*

*Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993) (citation omitted). Moreover, plaintiff must also show that defendant County was itself a "moving force" behind the deprivation, so that its policy or custom played a part in the constitutional violation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Here, plaintiff claims that defendants, with the exception of defendant Andes, created a custom under which unconstitutional practices occurred and that they allowed these customs and practices to continue. Even if this contention made sense, suffice it to say that plaintiff has not *identified* any County policy or custom permitting officers to beat inmates, much less connected that policy to the County or demonstrated how his injuries were caused by the policy. There is simply no evidence to show that defendants acted under a governmental policy when engaging in the alleged assaultive conduct.

Plaintiff also contends that the County failed to properly train all defendants employed at the WCDC. The County may be sued under § 1983 for inadequate training of defendants, but only if its failure constitutes deliberate indifference to the rights of persons with whom defendants come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference, in this context, will be found where plaintiff shows that the County provided inadequate training to WCDC officers though the consequences resulting from a lack of

instruction were foreseeable and though there were repeated complaints of constitutional violations by those officers. *Id.* at 389-90. True, plaintiff has correctly identified that "[t]he deliberate indifference standard applies ... [to] Plaintiff's claims of inadequate...training and control by...the local government." [Compl., at 9, ¶ 26]. However, it is also true that plaintiff has not specified the omission in training, has not shown how the alleged assault was a foreseeable result of the lack of any instruction, and has pointed to no wrongdoing on the part of defendants, known by the County, to which it failed to respond.

For all these reasons, plaintiff has not given the County fair notice of his claims or the grounds upon which they rest and, thereby, has failed to state a § 1983 claim against defendants in their official capacities. All claims in this category are **DISMISSED**. Fed. R. Civ. P. 12(b)(6).

D. *Individual Capacity Claims*

As observed in the preceding section, plaintiff has also sued defendants in their individual capacities.

1. <u>Liability based on Direct Participation</u>: Even though respondeat superior does not provide a valid basis of liability, a supervisor can be held liable if he played an active role in the alleged misconduct, but not if he merely failed to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). To show active unconstitutional conduct, plaintiff

7

must demonstrate that a defendant implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of his subordinates. *Leach*, 891 F.2d at 1244.

Plaintiff's assertions, along these lines, are that defendants participated directly in the beating "by tacitly approving of the assault," failing "to remedy the wrongs done to [him]," and failing " to act and to act properly" on his written or verbal complaints concerning the incident. [Compl.,at 9-10, 30]. The allegation that defendants implicitly approved of the claimed misconduct is not supported by any factual underpinnings whatsoever. Without some elaboration of the facts and circumstances surrounding defendants' purported approval of the alleged misdeeds, these contentions are conclusory. Conclusory allegations, as are these, do not state a claim for relief under § 1983. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

The contention that defendants failed to remedy the misconduct is undercut by plaintiff's own allegation that defendant Andes was fired "because of the vicious attack ... upon the Plaintiff." [Comp., at 7, ¶21]. Finally, plaintiff's assertion that defendants failed to act when the assault was reported to them, by its own terms, equates to nothing more that a mere failure to act, to which no liability attaches. *Greene*, 310 F.3d at 899.

Since the above claims are the only ones offered against Major Brenda

Downes, she is **DISMISSED** as a defendant in this lawsuit.

2. Claims against Other Defendants

    a) *Capt. Finley*: According to plaintiff, his mother was denied his medical records by defendant Finley to cover up the complained of assault. Defendant's alleged conduct carries no constitutional implication because a mother has no right to her living adult son's prison medical record. While the allegation has no constitutional impact, it does raise an issue as to plaintiff's standing. Plaintiff has not contended that he himself was denied his medical records and, thus, he has not suffered any actual or threatened injury, without which, he lacks standing to raise this claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992).

    Plaintiff also maintains that defendant Finley burdened his exhaustion of remedies by hindering plaintiff's efforts to obtain a grievance form and to file a grievance. However, plaintiff has no right to a grievance procedure and the creation of such a procedure by the WCDC does not create a federal constitutional right to one. *Adams v. Rich*, 40 F.3d 72, 75 (4th Cir. 1994). Logic would compel the conclusion that defendant did not engage in a constitutional violation by impeding plaintiff's access to a grievance system to which he had no right in the first place. Since there are no remaining claims against Capt. Finley, he too is **DISMISSED** as a defendant.

    b) *Sgt. Jenkins*: This defendant, so plaintiff contends, pulled his hair,

which hurt his neck, while plaintiff was strapped in a restraint chair. Plaintiff does not allege the date this claimed episode occurred or any other details surrounding the supposed incident. Thus, the allegation is conclusory and does not state a claim for relief. *Morgan*, 829 F.2d at 12.

Even if the assertion is not conclusory, it fails to state an actionable claim for use of excessive force. The Due Process Clause of the Fifth Amendment protects a federal detainee from the use of excessive force that amounts to punishment. *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005). While the Eighth Amendment does not apply "until after conviction and sentence," *Graham v. Connor*, 490 U.S. 386, 392 (1989), a pretrial detainee's claim of excessive force is evaluated under an Eighth Amendment standard because both amendments offer essentially the same protections. *Spencer v. Bouchard*, 449 F.3d 721, 727-28 (6th Cir. 2006).

An Eighth Amendment claim contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id.*, at 834, (i.e, whether the force was "harmful enough"). Though plaintiff need not prove significant injury, *see Hudson*, 503 U.S. at 8-10 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less that some arbitrary quantity of injury"), he must show more than minimal harm

to satisfy this element of his claim. *Id.* at 8-9 (finding that Eighth Amendment allows minimal uses of physical force which are not "repugnant to the conscience of mankind") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The subjective inquiry is focused on whether the use of force constitutes punishment which, in turn, depends upon the officer's intent (i.e., whether force was used in good faith to restore order or maliciously and sadistically for the very purpose of causing harm). *Hudson*, 503 U.S. at 6-7; *Whitley,* 475 U.S. at 320.

The first element is missing here. The harm alleged is that plaintiff's neck hurt as a result of having his hair pulled.[3] This reflects, at most, a *de minimis* injury. "There is, of course, a *de minimis* level of imposition [of punishment] with which the Constitution is not concerned." *Ingraham v. Wright*, 430 651, 674 (1977). *See also Hudson v.McMillian*, 503 U.S. 1, 9-10 (1992) (finding that "cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force"); *Gavin v. Ammons*, 1994 WL 117983,* 1 (7th Cir. Apr. 6, 1994) (Pulling an inmate's hair, though not necessary to maintain or restore order, was a *de minimis* use of force and not the type of conduct repugnant to mankind.) It is

---

[3] The extent of injury is relevant to both components of an Eighth Amendment claim for excessive force—the subjective component (whether defendant possessed a sufficiently culpable state of mind) and the objective component (whether defendant's conduct was harmful enough to implicate the Eighth Amendment). *Hudson*, 503 U.S. 1, 8-10.

also worth mentioning that, when asked by the WCDC authorities whether any guard, save defendant Andes, had put his hands on him while he had been confined at that facility, plaintiff did not even recall the hair-pulling episode. [Compl., Attach. #3, Grievance Appeal of Mar. 21, 2005 at 3.] This suggests that, perhaps, he too viewed this alleged use of force as *de minimus*.

At any rate, plaintiff's failure to establish the objective component of his excessive-force claim obviates any need for the Court to consider whether he has demonstrated the requisite subjective element. Since plaintiff has failed to show that his right to due process was violated by Sgt. Jenkins' action, this defendant officer is **DISMISSED**.

c) *Sgt. Davis*: Plaintiff maintains that, after he was locked in a cell in the booking area, this defendant jokingly commented that plaintiff got what he deserved, that he had heard plaintiff "scream like a female dog," and that he had heard him yelling all the way in Central. [Compl. ¶ 21; Attach. #2, Letter dated Feb. 13, 2005, at 3]. According to plaintiff, these alleged remarks are telling him that Sgt. Davis must have watched the assault on camera and done absolutely nothing to stop it. [*Id.*] Plaintiff has stated an arguable claim against defendant Davis for failing to protect him from an assault by a fellow jailer.

d) *Officer Nicholas Andes*: Plaintiff alleges that, while he was

handcuffed, unresisting, and begging him to stop, defendant physically assaulted him. These allegations state a claim under § 1983 for excessive force. *Whitley*, 475 U.S. at 327; *Graham*, 490 U.S. at 395 n. 10 (finding that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment).

e) ***Officer Tim Moore***: Plaintiff has asserted three claims against this defendant. In the first of these, plaintiff maintains that defendant Moore conspired with defendant Andes to fabricate a false disciplinary report to cover up the above wrongdoing. Claims of a conspiracy must be pled with specificity; vague and conclusory allegations, unsustained by facts, are not enough. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Because plaintiff has not elaborated on his allegations of conspiracy, he fails to state a claim under § 1983. *Morgan*, 829 F.2d at 12).

Second, plaintiff asserts that defendant Moore aggravated and antagonized him about the assault. However, "harassment and verbal abuse ... do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa* 357 F.3d 539, 546 (6th Cir. 2004). Though defendant's alleged behavior may be shameful and unprofessional, it is not unconstitutional. *Ivey v. Wilson*, 832 F.2d 950, 954 (1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the

meaning of the Eighth Amendment.").

Plaintiff's final assertion is that defendant Moore watched the assault but failed to stop it or report it. Plaintiff offers no other contentions of fact or circumstances to support that this defendant saw plaintiff's alleged beating. For example, while plaintiff claims that defendant Andes called defendant Moore while plaintiff was in his cell packing his belongings, plaintiff does not contend that defendant Moore was present in the hall when the alleged assault occurred or that he watched it on camera or that he was in a position to intervene. Because there are no facts to flesh out this allegation, it is conclusory, and because it is conclusory, it fails to state a claim. For the foregoing reasons, defendant Moore and all claims against him are **DISMISSED**.

Because plaintiff has stated colorable claims against defendants Davis and Andes, the Clerk is **DIRECTED** to send him two service packets. (Each contains a blank summons and USM 285 form.) Plaintiff is **ORDERED** to complete the service packets and to return them to the Clerk's office within twenty (20) days of the date of this Order. Plaintiff is forewarned that failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

When the completed service packets are received by the Clerk, the

summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service upon defendants. Defendants are **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure.

Plaintiff is **ORDERED** to inform the Court of any address change within ten (10) days following such change. He is further cautioned that his failure to do so will result in a dismissal of this action for failure to prosecute.

**ENTER**:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE